UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

CINDY SISTRUNK                                                                                          PLAINTIFF

VERSUS                                                            CIVIL ACTION NO. 3:21CV413-KHJ-RPM

COMMISSIONER OF SOCIAL SECURITY                                                    DEFENDANT

**REPORT AND RECOMMENDATION**

This matter is before the undersigned on Plaintiff Cindy Sistrunk's appeal from the Commissioner of Social Security's decision denying her claim for disability benefits under the Social Security Act (the Act). At the time of her alleged disability, Sistrunk was 48 years old, with a 12th grade education, and past relevant work as a bank teller. Doc. [9] at 144, 147, 171, 210, 381, 391. In her application for disability benefits, she alleged a disability onset date of June 30, 2012, based on degenerative disc disease, osteoarthritis, fibromyalgia, depression, and overactive bladder. *Id.* at 210-11, 220, 253. Her application was denied initially and on reconsideration. *Id.* at 216, 225, 261-62. Sistrunk requested and was granted a hearing before an Administrative Law Judge (ALJ). *Id.* at 186-209, 280-81. ALJ Jim Frasier issued a decision finding that Sistrunk was not disabled. *Id.* at 232-43. The Appeals Council remanded the matter for further consideration of Sistrunk's alleged somatization disorder. *Id.* at 249-51.

On remand, ALJ Laurie Porciello conducted two hearings. *Id.* at 79-185. She issued an unfavorable decision on January 7, 2021. *Id.* at 15-31. The ALJ found that Sistrunk had not engaged in substantial gainful activity from March 19, 2014, through the last date of insured of December 31, 2017. *Id.* at 18. The ALJ determined that Sistrunk suffered from severe impairments of lumbar and cervical degenerative disc disease, osteoarthritis, fibromyalgia, and obesity. *Ibid.* The ALJ considered Sistrunk's alleged mental impairments but found that Sistrunk's somatization disorder, depression, and anxiety were not severe. *Id.* at 19-21. The

ALJ further found that Sistrunk did not meet the requirements of any of the listed impairments under the Act. *Id.* at 21-22. Based on Sistrunk's severe and non-severe impairments, the ALJ found that Sistrunk had the residual functional capacity (RFC) to perform light work, except that she should never climb ladders, ropes or scaffolds and should only occasionally balance, stoop, kneel, crouch, crawl, or climb ramps or stairs. *Id.* at 22. Relying on the testimony of a vocational expert, the ALJ concluded that Sistrunk can perform past relevant work as a teller. *Id.* at 30. Accordingly, the ALJ found Sistrunk to be not disabled under the Act. *Id.* at 30-31.

The Appeals Council denied Sistrunk's request for review. *Id.* at 6-9. She then filed the instant complaint in federal court. In her motion for summary judgment, Sistrunk argues that (1) the ALJ erred by failing to include limitations related to mental impairments in the RFC; (2) the ALJ failed to properly consider Sistrunk's arthritis affecting her upper extremities in determining the RFC; and (3) the ALJ failed to properly consider Dr. Reginald Bass' opinion regarding the consistency of Sistrunk's symptoms and limitations. Doc. [11] [12].

## Law and Analysis

### Standard of Review

The federal district court reviews the Commissioner's decision only to determine whether the final decision is supported by substantial evidence and whether the Commissioner used the proper legal standards to evaluate the evidence. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). If the court determines the Commissioner's decision is supported by substantial evidence, then the findings are conclusive; and the court must affirm the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *see also* 42 U.S.C. § 405(g). This standard requires supporting evidence that is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court is not permitted to "reweigh the evidence in the record, nor try any issues de novo, nor substitute our judgment for the judgment of the [Commissioner], even if the evidence preponderates against the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988). "'Conflicts in the evidence are for the [Commissioner] and not the courts to resolve.'" *Brown*, 192 F.3d at 496 (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)). While the court may alter the Commissioner's decision if based upon faulty legal analysis, the court should defer to the Commissioner's legal conclusions if they are within a permissible meaning of the statutory or regulatory language. *Chevron, U.S.A., Inc. v. National Resources Defense Council*, 467 U.S. 837, 843–44 (1984).

A claimant bears the burden of proving the existence of a medically determinable impairment that has prevented the claimant from engaging in substantial gainful employment. 42 U.S.C. § 423 (d)(1)(A); 42 U.S.C. § 423 (d)(5). The Social Security Administration (SSA) utilizes a five-step sequential process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a), § 404.920(a). Under this analysis, the ALJ may decide a claimant is disabled if he finds that (1) the claimant is not employed in substantial gainful activity; (2) the claimant has a severe, medically determinable impairment; (3) the claimant's impairment meets or equals one of the listings in appendix 1 to subpart P of § 404; (4) the impairment prevents the claimant from performing any past relevant work; and (5) the impairment prevents the claimant's ability to adjust to performing any other work. *Id.*

The claimant initially bears the burden of proving disability under the first four steps, but the burden shifts to the SSA for the fifth step. *Chapparo v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987). Therefore, if the claimant proves that he is unable to perform past relevant work, the SSA

must demonstrate that the claimant can perform another occupation that exists in significant numbers in the national economy. The burden then shifts back to the claimant to establish that he cannot perform this alternative employment. *Id.*

**<u>Mental Impairments</u>**

Sistrunk argues that the ALJ failed to include functional limitations in the RFC related to her mental impairments. In determining the severity of Sistrunk's mental impairments, the ALJ considered Paragraph B's four broad areas of mental functioning set out in the disability regulations: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. Doc. [9] at 19-20. Although the ALJ found Sistrunk's somatization disorder, depression, and anxiety to be non-severe, Sistrunk argues that the ALJ should have included mental limitations in the RFC based on the ALJ's finding that she had mild limitations in the four areas of mental functioning.

At step two of the sequential analysis, the ALJ concluded that Sistrunk's somatization disorder, depression, and anxiety were non-severe impairments. Doc. [9] at 19-20. With respect to the first functional area of understanding, remembering, or applying information, the ALJ found that Sistrunk had "at most mild limitation." *Ibid.* With respect to the second functional area of interacting with others, the ALJ found Sistrunk had "at most" or "no more" than mild limitation. *Id.* at 20. With respect to the third functional area of concentrating, persisting, or maintaining pace, the ALJ found Sistrunk had "no more than mild limitation." *Ibid.* With respect to the fourth functional area, the ALJ found that Sistrunk had "mild limitation." *Ibid.* Sistrunk asserts that the ALJ found mild limitations as to the four functional areas. As the above summary demonstrates, in three of those four areas, the ALJ concluded that Sistrunk's

limitations were "at most mild" or "no more than mild", thereby suggesting that her limitations could be something less than mild.

Regardless, the undersigned finds that substantial evidence supports the ALJ's decision not to include mental limitations in the RFC. After a lengthy discussion of the treatment records, the ALJ specifically concluded that there was "no evidence of record to indicate work-related restrictions due to this [mental] impairment." Doc. [9] at 19. The ALJ provided a thorough examination of the four mental functioning areas and noted the absence of any evidence to support a finding of severe impairment. *Id.* at 19-20. In part, the ALJ's discussion included consideration of the limiting effects of Sistrunk's mental impairments. For example, the ALJ cited to the findings of Dr. Cook and Dr. Boggs, as well as the absence of statements from other medical providers regarding problems in any of the four functioning areas. Dr. Boggs noted that Sistrunk had never sought mental health treatment; denied feeling depressed or anxious and primarily saw her problems in terms of physical pain; and her remote recall was good. Dr. Boggs did not note any issues with communication or behavior. He observed that Sistrunk was properly oriented and appeared of average intelligence. Dr. Cook likewise did not note any difficulties with communication or behavior. As related by the ALJ, at a November 2015 examination, the doctor noted that Sistrunk had good recent and remote memory, and normal attention span and concentration. As noted by the ALJ, no medical provider mentioned difficulties with Sistrunk's ability to follow instructions, ask appropriate questions, or describe her symptoms and medical history; and no treating source noted unusual attire or lack of hygiene. Exacerbation of symptoms appeared to respond to medications. The ALJ also discussed Sistrunk's testimony regarding her ability to interact and found that she demonstrated adequate communication skills.

Furthermore, the ALJ weighed the medical opinion evidence regarding any limiting effects from Sistrunk's mental impairments. *Id.* at 27-28. In considering Dr. Boggs' medical opinion, the ALJ noted that Sistrunk admitted to not receiving specialized mental health care and did not report in her disability application any mental health condition that prevented her from working. *Id.* at 28. Dr. Boggs assessed somatic disorder secondary to pain; however, as noted by the ALJ, at an August 10, 2017, presentation to her pain management provider, Sistrunk reported that her pain was stable, and she was satisfied with her current medication regimen. With respect to Dr. Boggs' opinion, the ALJ noted that the report was "primarily a recitation of statements and/or assertions made by the claimant, and it does not offer an opinion of what she can or cannot do, or specific mental restrictions." *Id.* at 28; *see Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (subjective complaints must be corroborated by objective medical evidence). The ALJ further relied on "multiple other normal findings as to mental status in other examinations" as a basis for rejecting mental limitations. Doc. [9] at 26-27. In addition, the ALJ found persuasive the 2015 opinion of a state agency psychological consultant who found Sistrunk's mental impairments to be non-severe and mild. *Id.* at 28. This psychologist also noted that Sistrunk received prescriptions for psychotherapeutic medications but was stable on therapy. *Ibid.*

Sistrunk essentially argues in her reply brief that whenever an ALJ conducts a severity analysis at step two with respect to mental impairments and finds mild limitations, then the ALJ is required to include mental limitations in the RFC assessment. The undersigned disagrees. *See Kora v. Saul*, No. 20-327-JWD-RLB, 2021 WL 3829128, at *9 (M.D.La. Aug. 11, 2021) (rejecting claimant's contention that mild limitations in the four functional areas should necessarily result in certain mental limitations being included in the RFC). The severity analysis

and RFC assessment are separate and distinct steps in the sequential analysis. *See Gutierrez v. Barnhart*, No. 04-11025, 2005 WL 1994289, at *9 (5th Cir. Aug. 19, 2005) (per curiam) (unpublished) ("[a] claimant is not entitled to Social Security disability benefits merely upon a showing that (s)he has a severe disability. Rather, the disability must make it so that the claimant cannot work to entitle the claimant to disability benefits."); *Suttles v. Colvin*, 543 F.App'x. 824, 826 (10th Cir. 2013) (holding that "mental limitations noted in the threshold inquiry at steps two and three do not apply at later steps"). Although the ALJ is required to consider non-severe impairments when conducting an RFC assessment, if the impairment does not produce limiting effects, then the ALJ is not obliged to include limitations in the RFC based on those non-severe impairments. *See Thomas v. Comm'r of Social Security*, No. 16-830-RLB, 2018 WL 1095569, at *13 (M.D.La. Feb. 28, 2018). In the instant case, the ALJ considered the limiting effects of Sistrunk's mental impairments and explained her reasons for not including any restrictions in the RFC. There is no legal error when an ALJ declines to include mental limitations in a residual-functional-capacity analysis "so long as the ALJ considered the limiting effects and restrictions of all impairments in the RFC analysis, even those impairments that are non-severe." *Martha L. v. Saul*, No. 1:20-CV-00003-H-BU, 2021 WL 3610316, at *5 (N.D. Tex. July 27, 2021) (collecting authorities).

The cases cited by Sistrunk in support of her position involved findings of severe mental impairments and/or more significant findings of mental limitations than those identified in the instant case. *See Winschel v. Comm'r of Social Security*, 631 F.3d 1176, 1181 (11th Cir. 2011) (claimant suffered moderate limitation in maintaining concentration, persistence, and pace); *Stewart v. Astrue*, 561 F.3d 679, 681, 684-85 (7th Cir. 2009) (ALJ found that claimant suffered from severe mental impairments but failed to fully account for limitations of concentration,

7

persistence, and pace); *Ramirez v. Barnhart*, 372 F.3d 546, 554 (3d Cir. 2004) (claimant "often" suffered from "deficiencies of concentration, persistence, or pace resulting in a failure to complete tasks in a timely manner (in work settings or elsewhere)."); *Newton v. Chater*, 92 F.3d 688, 695 (8th Cir. 1996) (same). By contrast, in the instant case, Sistrunk did not have a severe mental impairment and suffered at most only mild limitations in the four mental functioning areas. The ALJ properly considered and weighed the medical opinion evidence related to mental-health treatment and concluded that there was no evidence to support work-related limitations. *See Jeansonne v. Saul*, 855 F.App'x 193, 198 (5th Cir. 2021) ("the evidence supports a finding that [claimant's] mild mental limitations do not significantly affect her ability to work. Therefore, we determine that the ALJ did not err in declining to consider [claimant's] mental impairments at step five."); *Gonzales v. Colvin*, No. 3:15-CV-0685-D, 2016 WL 107843, at *6 (N.D.Tex. Jan. 11, 2016) (finding that ALJ sufficiently considered non-severe, mental impairments in calculating the RFC, and therefore did not err by not including any mental limitations in the RFC). As discussed above, the ALJ's conclusion is supported by substantial evidence. *See Silvio v. Saul*, No. 20-381-BAJ-RLB, 2021 WL 4498991, at *6 (M.D.La. Aug. 18, 2021) ("because substantial evidence supports the finding that Plaintiff's mild mental limitations do not significantly limit his ability to work and do not prevent the claimant from performing any other substantial gainful activity, the ALJ need not include Plaintiff's non-severe impairments in the RFC").

**Arthritis**

Sistrunk next argues that the ALJ failed to include limitations based on arthritis in her thumb and wrist joints. Sistrunk asserts that the ALJ should have included limitations on her ability to reach, handle, or finger, which in turn would have precluded her from work as a bank

teller. She points to Dr. Joe Cook's consultative examination where he noted poor motion of the wrist joints, reduced grip strength bilaterally, and x-ray evidence of arthritis.

The ALJ in fact considered Dr. Cook's medical opinion and found no manipulative limitations based in part on Dr. Cook's finding that Sistrunk had "good fine and gross manipulative skills." Doc. [9] at 29. Moreover, Dr. Cook opined that "[a]lthough [Sistrunk] does have arthritic changes on x-rays, this presents *no limitation* for her." (emphasis added). Nor did Dr. Cook assign "specific work-related limitations associated with her wrists." *Ibid*. The ALJ also pointed to additional records from October 3, 2017, which made no mention of upper extremity limitations or abnormal examination findings. *Ibid.* Based on the foregoing, substantial evidence supports the ALJ's decision not to include manipulative limitations in the RFC.

**Dr. Bass' Opinion**

Finally, Sistrunk argues that the ALJ failed to properly consider Dr. Bass' medical opinion as it relates to limiting effects regarding the consistency of Sistrunk's statements about functional limitations. The ALJ did discuss and weigh Dr. Bass' opinion. Sistrunk apparently feels that the ALJ did not consider a specific portion of Dr. Bass' opinion; namely whether Sistrunk's statements about the intensity, persistence, and functionally limiting effects of her symptoms are substantiated by the objective medical evidence alone.

Rather than identifying an error in the ALJ's decision, Sistrunk in essence attacks the ALJ's weighing of competing physicians' opinions. Any finding that there is no substantial evidence to support the Commissioner's determination is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000). In the instant case, the ALJ weighed the competing medical opinions

and found Dr. Bass' less persuasive. As noted by the ALJ, in a 2015 consultative opinion, Dr. Bass opined that Sistrunk had the exertional capacity to perform a full range of light work. Doc. [9] at 28, 259. In 2017, a state agency medical consultant also opined that Sistrunk could perform light work but added postural limitations. *Id.* at 28, 214. The ALJ found the latter opinion more persuasive than Dr. Bass' and imposed additional postural limitations in the RFC. *Id.* at 28. In other words, the ALJ found greater limitations than those suggested by Dr. Bass; yet Sistrunk argues, somewhat incoherently, that the ALJ failed to properly take into account Dr. Bass' opinion. Sistrunk isolates from Dr. Bass' opinion, his one-word answer of "yes" to the question whether Sistrunk's "statements about the intensity, persistence, and functionally limiting effects of the symptoms [are] substantiated by the objective evidence alone." *Id.* at 258. Sistrunk asserts that this isolated statement from the medical opinion should have been included in the ALJ's analysis. The 2017 consultative examiner, whose opinion the ALJ found to be more persuasive, answered "no" to this identical question. *Id.* at 213. In other words, Sistrunk merely points to a conflict in the medical opinion evidence. *See Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir.1990) (stating that ALJ has the responsibility to resolve conflicting medical opinions).

Assuming *arguendo* that the ALJ erred by failing to consider this specific detail gleaned from Dr. Bass' opinion, Dr. Bass did not assign any limitations more restrictive than those contained in the ALJ's RFC. Dr. Bass indicated only that Sistrunk is limited to light work with no additional non-exertional limitations noted. Thus, Sistrunk has failed to articulate any prejudice resulting from the ALJ's omission. "The party seeking to overturn the Commissioner's decision has the burden to show that prejudice resulted from an error." *Jones v. Astrue*, 691 F.3d 730, 734-35 (5th Cir. 2012). As such, any error would be harmless. *See Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir.2003)).

## RECOMMENDATION

Based on the foregoing, the undersigned recommends Plaintiff's motion for summary judgment be denied and that the decision of the Commissioner be affirmed.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court. A party filing objections must specifically identify those findings, conclusions and recommendations to which objections are being made; the District Court need not consider frivolous, conclusive or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on the District Judge and on all other parties. A party's failure to file such objections to the proposed findings, conclusions and recommendation contained in this report shall bar that party from a de novo determination by the District Court. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions that have been accepted by the district court and for which there is no written objection. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

SO ORDERED AND ADJUDGED, this the 14th day of July 2022.

/s/ *Robert P. Myers, Jr.*
ROBERT P. MYERS, JR.
UNITED STATES MAGISTRATE JUDGE